# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

SHARON SYTNER,

    Plaintiff

v.

OB/GYN SPECIALISTS OF THE
PALM BEACHES, INC., d/b/a OB/GYN
SPECIALISTS OF THE PALM BEACHES

    Defendant.
_____/

CASE NO.:

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

## COMPLAINT

Plaintiff, Sharon Sytner ("Plaintiff" or "Sytner"), by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendant OB/GYN SPECIALISTS OF THE PALM BEACHES, INC., d/b/a OB/GYN SPECIALISTS OF THE PALM BEACHES ("Defendant"), and alleges as follows:

## NATURE OF CASE

1. This is an action for damages and other relief for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), and the Florida Civil Rights Act of 1992, Florida Statutes §§760.01-760.11 (the "FCRA"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

2. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), and the Florida Civil Rights Act of 1992, Florida Statutes §§760.01-760.11 (the "FCRA").

1

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), and supplemental jurisdiction pursuant to 28 U.S.C. 1367 under the Florida Civil Rights Act of 1992, Florida Statutes §§760.01-760.11 (the "FCRA").

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within West Palm Beach, Florida, which is in Palm Beach County, Florida.

## PROCEDURAL PREREQUISITES

5. Plaintiff has complied with all statutory prerequisites to file this action.

6. On or about December 7, 2017 Plaintiff dual-filed charges with the EEOC and FCHR against Defendant as set forth herein.

7. An EEOC filing automatically operates as a dual Florida Commission on Human Relations ("FCHR") filing.

8. On or about December 9, 2019 the EEOC issued Plaintiff a Right to Sue Letter.

9. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

10. At all material times, Plaintiff is an individual woman who is a resident of Palm Beach County, Florida.

11. Upon information and belief, at all material times, Defendant is a Florida For-Profit Business Corporation authorized under the laws of the State of Florida with offices in Palm Beach County, Florida.

12. Defendant is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

**STATEMENT OF FACTS**

13. Defendant hired Plaintiff on or about May 3, 2017 as a "Sono/US Tech ARDMS" at Defendant's Palm Beach Gardens Location (2979 PGA Blvd., Suite 100, Palm Beach Gardens, FL 33410). A non-exhaustive list of Plaintiff's duties included: conducting prenatal ultrasound and gynecologic exams; billing; patient vitals; and, computer data entry for women's health examinations.

14. Plaintiff has approximately twenty-seven (27) years of experience in her field.

15. Plaintiff was employed as a full-time employee with a schedule of Monday through Friday from 8:30 am to 5:00 pm. On most days, Plaintiff was permitted to leave at or around 4:30 p.m.

16. At all times material hereto, Lead Ultrasound Supervisor Nicole Slack (hereinafter "Slack") directly supervised Plaintiff. Director of Clinical Operations Marisela Farias (hereinafter "Farias") and Chief Administrative Officer Jeffrey Gold ("Gold") also held a supervisory authority over Plaintiff. Farias initially hired Plaintiff.

17. At all times material hereto, Slack, Gold and Farias had authority over Plaintiff, including but not limited to, the ability to hire, discipline, and fire her.

18. Plaintiff is and was Orthodox Jewish. Plaintiff regularly practices her Faith, including but not limited to observing the Jewish holidays.

19. Specifically, Plaintiff observes the Sabbath every week from approximately the sunset on Friday until nightfall on Saturday and all Jewish Holidays. It is prohibited in the Jewish Orthodox religion for observers to work or travel from approximately eighteen minutes before sunset on the eve of the Holiday or Sabbath until after nightfall following the Holiday and the Sabbath.[1]

20. On or about July 18, 2017 Plaintiff requested a minor reasonable accommodation due to the upcoming Jewish holidays, which started September 21, 2017. Slack advised Plaintiff that she would only be able to take time off if she had accrued enough paid time off leave and secured coverage during her absence.

21. On or about July 27, 2017 Plaintiff e-mailed Slack requesting leave only from 3:00 p.m. for the eve of the Jewish New Year (Rosh Hashannah), which was observed on September 20, 2017 at sunset . Although Plaintiff had earned sufficient paid time off leave to cover the hours she desired to take off, Slack denied her request to leave early on the eve of Rosh Hashannah. Slack further denied Plaintiff the accommodation for time off for October 12 and 13, the last days of the Holiday of Succoth.

22. Prior to her leave request, Plaintiff had not received a single complaint pertaining to her work performance. However, following her request for a reasonable accommodation, on August 3, 2017 Plaintiff met with Slack to go over her three-month review. For the first time, Slack informed Plaintiff that OB/GYN had received two complaints about Plaintiff. Slack further claimed that Plaintiff's co-workers believe she was "stand-offish".

23. At the review, Plaintiff re-requested leave for the observance of her Faith. Slack reiterated: "only if you have PTO ["Paid Time Off"] and we have staffing."

---

[1] Jewish Alliance of Greater Rhode Island, Community Relations Council, www.shalomri.org, additional information may be accessed at: https://www.jewishallianceri.org/pdf/Calendar-Holidays_CRC.pdf.

24. On or about September 13, 2017 Plaintiff e-mailed Slack and Farias to request an accommodation starting November 10, 2017 for permission to leave thirty to ninety minutes early, the exact amounts of time being determined by the time of sunset on Fridays so that she could arrive home in sufficient time so as to not violate the Sabbath.

25. On or about September 15, 2017 Plaintiff received a response from Slack and Farias, wherein they included Chief Administrative Officer Gold on the e-mail. The response did not address the request, but rather scheduled a time for Gold, Slack, Farias, and Plaintiff to meet on September 18, 2017 at 4:00 p.m. at Defendant's Northpoint location.

26. On or about September 18, 2017 at 2:11 p.m. Slack e-mailed Plaintiff a list of clients to see within an impossible timeframe. Plaintiff was to conduct three forty-minute exams (totaling two hours alone) while attending to ancillary matters and seeing additional patients within that same two-hour time frame, notwithstanding that Plaintiff was previously directed to attend a meeting fifteen to twenty minutes away at 4:00 at the Northpoint location. Plaintiff was extremely busy otherwise and unable to complete that task and still arrive at the meeting on time, so she opted for punctuality at the meeting, as Slack had previously advised that coverage was available for the scheduled patients.

27. On or about September 18, 2017 Plaintiff met with Gold, Farias, and Slack regarding her need for time off to properly observe her religious holidays. The meeting began with Gold confronting Plaintiff and questioning/ doubting her religious beliefs. By way of example, before Plaintiff could even sit down, Gold looked Plaintiff up and down in a degrading manner and then accused Plaintiff of not dressing like an Orthodox woman. Plaintiff explained that she dresses conservatively outside of work, but complies with the employee handbook in wearing the scrubs Defendant required as her uniform to work. Gold further

demanded to know why Plaintiff did not inform Defendant when hired seven months earlier, that she was Orthodox and would need accommodations. Ultimately, Plaintiff was informed that the only way they could accommodate her request to leave early on some Fridays, was to permanently transfer her to a different location, which was a much less desirable location than her current assignment and considered a demotion.

28. At the meeting with Gold, Farias, Slack, and Plaintiff, Gold, for the first time, advised Plaintiff of eight (8) complaints that were allegedly made against Plaintiff by clients. These complaints predated Plaintiff's three-month review, but Plaintiff was never informed of them during her review. In fact, previously, Plaintiff had only been advised of two (2) complaints. Defendant only alleged the existence of complaints when Plaintiff requested a reasonable religious accommodation. Further, Plaintiff requested to see the complaints, but Gold refused to show them to her.

29. Prior to her requests for a reasonable accommodation, no complaints from co-workers, patients, supervisors, or anyone else had been made in reference to Plaintiff.

30. Plaintiff felt as though she had to make an impossible choice between continuing to work at her current location or the need to observe her religious beliefs, so she ultimately accepted the transfer to work in a different, less desirable, office location.

31. On Monday October 2, 2017, Plaintiff's work location was changed abruptly and she was sent to a new facility in which she had never before been assigned. Plaintiff was scheduled to start her first day of work at the new less desirable office location on October 3, 2017 and Plaintiff worked the full day at this location, notwithstanding Defendant's failure to provide the promised orientation.

32. After completing her shift on October 3, 2017, Plaintiff was called into the office and was advised by Farias that Plaintiff's employment was terminated effective immediately and that the decision to terminate Plaintiff's employment was made the previous Friday, September 29.

33. Defendant wrongfully and unlawfully terminated Plaintiff because of her religious beliefs, and in retaliation for her objections to Defendant's discriminatory treatment.

34. As a result of Defendant's actions, including those of its employees and/or agents, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

35. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

36. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

37. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

38. The above are just some examples, of some of the discrimination to which Defendant subjected Plaintiff.

39. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

# COUNT ONE
## Cause of Action for Discrimination Under Title VII for Disparate Treatment Based on Plaintiff's Religion

40. At all times relevant, Plaintiff is and was a devoted member of the Orthodox Jewish Faith.

41. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

    "(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

42. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her religion.

43. As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

44. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

45. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

46. Plaintiff has been damaged by the illegal conduct of Defendant.

# COUNT TWO
## Cause of Action for Retaliation Under Title VII

47. Plaintiff made numerous requests for a reasonable religious accommodation – to leave early on Fridays so that she could practice her Orthodox Jewish Faith.

48. Instead, phantom alleged complaints came to light when Plaintiff requested and renewed her request for a reasonable religious accommodation.

49. Plaintiff was never informed of any complaints prior to her requests for a reasonable religious accommodation - despite how the alleged complaints pre-dated her most recent performance review, she was never advised of any complaints at that time. To Plaintiff's knowledge, no complaints by co-workers, patients, supervisors, or anyone else even existed prior to her requests.

50. Slack informed Plaintiff that only if she had enough paid-time off and secured coverage for her position, could she take the leave. However, Slack denied Plaintiff's request for a mere two hours of leave to observe her Faith even though Plaintiff had accrued a sufficient number of paid-time off hours to cover the leave she needed.

51. Instead, Defendant offered Plaintiff a transfer to a different, less desirable, location rather than allowing her to take the time off she needed at her current location. Reluctantly, ultimately feeling like she had no other option when faced with that impossible choice, Plaintiff accepted Defendant's offer. Plaintiff was scheduled to begin work at the new location on or about October 3, 2017 but was unlawfully and wrongfully terminated that day.

52. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that Defendant's employees/agents violated Title VII.

53. At all times relevant, the unlawful discriminatory treatment by Defendant against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

54. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

55. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

56. At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Plaintiff's rights protected by Title VII.

57. At all material times, Defendant possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

58. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

59. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

60. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

61. Plaintiff has been damaged by the illegal conduct of the Defendant.

62. At all times material, Defendant allowed the harassing and discriminatory practices to continue in the work environment.

63. Defendant failed to take prompt remedial action to correct the harassment.

## **COUNT THREE**
### **Cause of Action for Discrimination Under FCRA for Disparate Treatment Based on Plaintiff's Religion**

64. The FCRA prohibits Defendant Company from discriminating against Plaintiff because of his religion, with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

65. Plaintiff requested a reasonable accommodation to be able to observe her religious beliefs.

66. Defendant, and its employees/agents, not only opposed that accommodation but also treated Plaintiff unfairly following her reasonable request.

67. Alleged client complaints became an issue only after Plaintiff pleaded to be able to properly observe her religious beliefs. Additionally, Plaintiff was forced to make a choice between continuing at her current level in the office she routinely works at or transfer so she can continue to properly worship/ observe her Faith.

68. Ultimately, Defendants terminated Plaintiff on the first day of work at the new location.

69. Defendants violated the FCRA by discriminating against Plaintiff based her religion, of which the Defendants were fully aware of.

70. As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

71. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

72. Conduct of Defendants and/or their agents deprived Plaintiff of his statutory rights guaranteed under state law.

73. Plaintiff has been damaged by the illegal conduct of Defendants.

## COUNT FOUR
### Cause of Action for Retaliation Under FCRA

74. Plaintiff complained of the discriminatory treatment she faced based on her religious beliefs.

75. While other employees were able to freely take leave, when Plaintiff requested to do so she faced opposition.

76. After some time of requesting accommodation so that she could properly observe her Faith, phantom complaints seemed to emerge. Despite predating reviews and previous meetings, Plaintiff had never previously been made aware of those complaints.

77. Ultimately, Plaintiff was forced to choose between what amounted to a demotion and her observance of her Faith. While she decided to take the transfer/demotion, she was terminated due to her request and follow-up for an accommodation at the end of the first day at the new location.

78. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations by Defendant's employees of FCRA had occurred.

79. At all times material, Defendant allowed the harassing and discriminatory practices to continue in the work environment.

80. Defendant failed to take prompt remedial action to correct the harassment.

81. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of his employment because she opposed a practice made unlawful by FCRA which would not have occurred but for that opposition.

82. Defendant engaged in unlawful employment practice prohibited by the FCRA by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

83. At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Plaintiff's rights protected by FCRA.

84. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with Defendant.

85. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

86. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

87. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

88. Plaintiff has been damaged by the illegal conduct of Defendant.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: March 6, 2020
      Miami, Florida

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

/s/ *Sarah Waters*
Sarah Waters, Esquire
FL Bar No. 118496
701 Brickell Avenue, Suite 1310
Miami, Florida 33131
Tel. (305) 946-1884
swaters@dereksmithlaw.com